FILED
 2013 Aug-07  PM 03:27
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TAMMY PATTERSON WISHON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 4:12-cv-0814-LSC |

## **MEMORANDUM OPINION**

The plaintiff, Tammy Patterson Wishon, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## **STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether she has a severe impairment;

  (3)  whether her impairment meets or equals one listed by the Secretary;

  (4)  whether the claimant can perform her past work; and

  (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

  In the instant case, the ALJ, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform her past relevant work, and accordingly found her not disabled.

## DISCUSSION

  This case involves a plaintiff who was 45 years old at the time of the ALJ's decision. She alleges disability due to mental illness with an alleged onset date of September 9, 2009.

  The medical evidence shows the plaintiff was admitted to the hospital in March 2009 after an intentional drug overdose. Her discharge diagnosis was Major Depression, single episode, severe, with suicidal ideation. R. 216. At discharge, she was

assessed a GAF score of 50.[1]  R. 216.  At a follow-up visit on May 13, 2009, the plaintiff reported she had two to three normal days, followed by three days of anxiety and depression.  R. 231.  Mental status examination revealed no suicidal ideation, hallucinations or delusions.  Id.  Her mood was down, but she exhibited appropriate insight and good judgment.  Id.  Her medications were adjusted, and she was to return in three weeks.  On June 3, 2009, the plaintiff complained of continued anxiety and depression, with no energy or motivation.  R. 230.  Her Mental status examination again showed no hallucinations, delusions, or suicidal ideation.  Id.  She was to return in five weeks.

On September 9, 2009, plaintiff was seen at Alabama Psychiatric Services by Dr. Ivanovic, M.D., who diagnosed Major Depression, recurrent, severe, and Panic Disorder without agoraphobia.  R. 234.  Dr. Ivanovic assigned a GAF score of 60.[2]  He noted the plaintiff had been noncompliance with treatment:

---

[1]  The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR").  A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  DSM-IV at 32 (emphasis in original).

[2]  A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)"  DSM-IV-TR at 34 (emphasis in original).

> I have talked to her at length about the need for compliance....  She always has had concerns that she was on "too many pills" and, in my view, quit medication too abruptly, without giving them a proper chance.  I made sure to explain to her that this is not how we should treat her this time.

Id.  Dr. Ivanovic offered the plaintiff admission to the hospital, but she refused.  ("[S]he does not want to go to the hospital and said that she needs to work and make an income."  Id.)  Dr. Ivanovic made adjustments to the plaintiff's medications and offered her individual therapy, which she declined.  Id.  There are no further treatment notes from Dr. Ivanovic.

In February 2010 the plaintiff was seen at the Eastside Mental Health Center ("EMHC") for an intake evaluation.  She was assessed a GAF score of 55.  R. 264.  The next treatment note from EMHC is dated August 19, 2010.  Plaintiff reported that she stopped taking her medications:  "Got off my meds because I was doing so good, but now I need to get back on them."  R. 258.  The treatment note indicates the plaintiff had been stable on her medications prior to stopping them.  Id.  The diagnosis was Major Depressive Disorder, recurrent, with psychotic features; Generalized Anxiety Disorder; Post Traumatic Stress Disorder; and Cannabis Abuse.  Id.  The diagnostic plan was to resume her medications.  Id.  She was to return to care in three months.  Id.  The final treatment note in the record is a November 4, 2010, psychiatry progress note from EMHC.  R. 265.  On mental status examination the plaintiff had poor judgment and insight.  Id.  Her mood was anxious and her affect was "fairly blunted."  Id.  Her diagnosis remained the same as in August and her medications were to be adjusted.

The ALJ found the plaintiff had a residual functional capacity (RFC) for a full range of work at all exertional levels, but with no exposure to unprotected heights, dangerous equipment or dangerous products.  R. 30.  Concerning the plaintiff's mental limitations, the ALJ found the plaintiff had moderate limitations in:

> working with supervisors, coworkers and the general public, maintaining attention to simple and repetitive tasks, understanding, remembering and carrying out simple instructions, working at a production rate pace; responding appropriately to work pressures, making judgments on simple decisions, and adapting to change in a routine work setting.

Id.  Based upon the testimony of a vocational expert (VE), the ALJ found the plaintiff was able to perform her past relevant work as an order filler.  R. 32, 65.

The plaintiff argues the ALJ's RFC finding was not supported by substantial evidence because "there was no Medical Source Statement (MSO) contained in the claim file from any examining or reviewing medical source."  (Pl.'s br. at 6.)  This argument is not persuasive.  Neither the law of this circuit nor the Commissioner's regulations require that an RFC be based upon a medical source statement from a doctor.  See, Langley v. Astrue, 777 F Supp. 2d. 1250, 1258 (N.D. Ala. 2011)(holding RFC is not a medical opinion and need not be based upon a doctor's RFC opinion)  Moreover, contrary to plaintiff's assertion, there is a medical source opinion in the record from the state agency reviewing psychologist, Dr. Jackson.  R. 237-250.  Doctor Jackson indicated the plaintiff had only mild functional limitations and had experienced only one or two episodes of decompensation.  R. 247.  The ALJ, however, found the plaintiff had

moderate limitations based upon other medical evidence of record, including the treatment note form Dr. Ivanovic.  R. 29.

The plaintiff's only other argument on appeal is that the ALJ's improperly relied upon the opinion of Dr. Jackson because she did not have access to the treatment records from Grayson and Associates, or from EMHC.  (Pl. br. at 7.)  The records from Grayson and Associates are from before the plaintiff's alleged onset date during a time the plaintiff continued to work.  R. 230-231.  The records from EMHC, summarized above, show the plaintiff was doing well while on medication.  They do not show any significant worsening in the plaintiff's condition after she was seen by Dr. Ivanovic on September 9, 2009.  Doctor Jackson based her opinions on Dr. Ivanovic's treatment note of that visit.  R. 249.  Therefore, the treatment notes cited by the plaintiff would not have been likely to change Dr. Jackson's opinion.  In any event, the ALJ found the plaintiff was more limited than did Dr. Jackson.  The ALJ considered the records cited by the plaintiff in reaching his decision and they support his RFC finding.

The medical records discussed above provide substantial evidence to support the ALJ's RFC finding.  The evidence shows the plaintiff's mental impairments were assessed as moderate by treating sources when she was compliant with medication therapy.  The ALJ noted the plaintiff's treating sources assessed GAF scores of 60 in September 2009, and 55 in February 2010.  These scores are consistent with moderate mental impairments and provide further support for the ALJ's RFC finding.

## CONCLUSION

The court has carefully reviewed the entire record in this case. For the reasons set out above, the court finds the Commissioner's decision is supported by substantial evidence and that proper legal standards were applied in reaching that decision. Accordingly, the decision of the Commissioner must be affirmed.

A separate order in conformity with this memorandum opinion will be entered.

Done this 7th day of August, 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
123966